The next case this afternoon is 523-0287 People v. Cooper. Dustin, arguing for the appellant, is Shoba Maha Dov. Arguing for the appellee is Aaron O'Connell. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Shoba Maha Dov Thank you, Your Honor. Good afternoon, and may it please the court, Shoba Maha Dov on behalf of Dustin Cooper. Dustin was a ninth grader just days past his 15th birthday when he joined a group of friends in an unfortunate plan to buy marijuana from 19-year-old Wyatt Bailey, an incident that ultimately resulted in the tragic deaths of Bailey and Claivante Sloan, Dustin's best friend. Dustin, who is still in his teens, is now serving a 40-year sentence. That's despite the multiple failures of the systems that should have protected him throughout his childhood, as well as the failures of the lower courts in this matter. We have raised on our appeal four issues, four such failures, but in the interest of time and without waiving any of the other issues in our briefing, and with the court's permission, I plan to address the issues of the Batson violation and transfer to adult court, but of course, I'm happy to answer any of the court's questions with regard to the remaining issues. Now, with regard to the Batson issue, thank you, Your Honor, weird and strange, wild cards, those are the words the state used in describing the only Black juror in the entire jury pool in this case, this case a trial of a child for first-degree murder. The pretextual reasons provided by the state for striking juror across, including the one ultimately relied on by the court, were a stretch at best. Now, before discussing the state's proffered reported race-neutral reasons, it's worth noting that context matters here. That was true in the Flowers case, and it is equally applicable here. So it wasn't at the start of trial, but after the initial panel that included Cross, at lunch that the state approached a police officer to ask of what he thought of, and these are the state's words, various jurors. This was not a, in other words, this wasn't like a blanket or routine background check into the entire veneer at the beginning of ordeer, but it was a targeted inquiry directed primarily at juror Cross. Now, the state had tried to have juror Cross dismissed initially for cause, for not admitting to prior, albeit minimal and old, criminal record, his prior and minimal and old criminal record, but the court actually rejected that challenge. The state then tried to use one of its peremptory challenges on juror Cross, but defense objected on Batson grounds. And after the defense made a prima facie showing of discrimination under Batson, which the court agreed was the case, the state provided three reasons, essentially, that it claimed were race-neutral here. The first was the minimal record that we already discussed that the court had sort of waved away and said was not really a reason. The reason the court had done that actually was because the question was confusing. It was a question posed to the entire jury panel about prior convictions, but also about whether family members and close friends may have been convicted. So the court rightly figured out that perhaps Cross had not understood that question, and in fact, upon further inquiry, Cross was completely straightforward about his criminal record, which was some 20 to 25 years old. So then the state posited another reason, which is, and in the state's words, it was weird and strange, that's a direct quote, that Cross was not somehow familiar with the exact jobs that his four adult children had who were living out of state, four out of five children. Now that, according to the state, was somehow a reason, a race-neutral reason, to excuse juror Cross. And then finally, the state also said that juror Cross's familiarity with the prosecution witnesses and the state's witnesses was a problem or would be another reason that they wanted him dismissed, because he was, as the state then said, a wild card. Now each of these reasons can be separately debunked, and they don't satisfy the Flowers test. As we said, the judge had eliminated the criminal conviction confusion, because that might have been the way the question was actually asked. But the judge did rely on the reason state ultimately proffered, which was familiarity with the defense and prosecution witnesses. And this test also fails a Flowers side-by-side comparison, your honors. Several jurors in the case, and perhaps this is not surprising in this courtroom, had familiarity with people who were witnesses or potential witnesses in the case. In fact, by our count, some 15 potential jurors had a personal connection with someone involved in the case. And indeed, some of the impaneled jurors were actually friendly with potential witnesses, including police officers primarily. And the truth is actually Cross was not familiar with, bless you, your honor, Cross was not familiar with the defense witnesses, as the state initially posited. What he actually said was that he recognized them and he might know them in passing, but he had actually, he couldn't even name them when pressed on that question. He merely said that he perhaps recognized them. And as the state, oh, and then with respect to the state's witnesses, he did have some familiarity with two family members of Wyatt Bailey's because they had just worked at the same company. And when asked, he, of course, said, I could be fair and that these were just fork interactions. So once again, none of these reasons rise to a level where we should consider them to be race neutral. And this is a, this is a case where context does matter. This is what Batson looks like in this setting, your honors. The point is to hide what is happening here. This court doesn't have to put blinders on what is plainly before it. The dismissal of juror Cross in this case, a trial of a black child accused of a very serious offense and ultimately convicted by that jury is a Batson violation. And your honors, if you don't have questions about that issue, I'm happy to move on to the transfer issue. Go ahead. Now with respect to the transfer issue, your honor, the evidence presented before the transfer court for the juvenile court provided documented, uncontroverted evidence with respect to several of the factors that would mitigate against transfer. And had the court conducted its analysis properly, Dustin would have remained in juvenile court. Now the court's failure to properly consider these factors and actually, in fact, turning that evidence on its head was unreasonable and an abuse of discretion. So Dustin, as I said initially, was barely 15 years old at the time of this case, sort of young on the adolescent development scale and young for purposes of transfer. But according to the experts who testified, well, there was an expert whose report was admitted at transfer as well as a high school principal who test, no, a middle school principal who had testified who was familiar with Dustin. Dustin's young age was compounded by trauma, which led to him to be even more underdeveloped. And what was that trauma? He had actually been shot at twice, once when he was 10 years old, just 10 years old, the second time when he was 14 before the incident in this case happened. And in addition to that, he had had to deal with the absence of his father who had been incarcerated for much of the period of his childhood, anxiety and mental health issues. And as the expert said, an outsized susceptibility to peer influence, which is something the middle school principal also said. Now, what did the court do with that information? The court turned that around and transferred it into a factor that spoke in favor of transfer. The court actually said that the fact that Dustin had been shot at was something that indicated his greater maturity. As the court put it, Dustin's life experiences are those beyond someone of his chronological age. So contrary to what the experts and the research actually said with respect to the effects of trauma, that it impacts his development in sort of a negative way and makes him less developed, the court somehow reached the opposite conclusion. The other thing that the court did was it found that Dustin had not received, so what some of the evidence was that Dustin had not received mental health services despite having a history of mental health needs. And the court took that and said, oh, that must mean these needs were not that serious. Really, the truth is that that meant that the adults who had failed Dustin, not that the needs were not serious. The fact that these issues were not addressed was not on the child in the situation, it was on the adults around him. And then another issue that came up was, and that the court ignored, was the abundant to the juvenile court's jurisdiction. The backwards logic of the court is apparent in this. Here's what the court said. Because Dustin has, and then here's the quote, never been exposed to any specific juvenile treatment programs, it would be, quotes, premature to predict whether the juvenile court services would be adequate. Now, that is entirely opposite to the way we should about juvenile court services and was opposite to the evidence we saw here. Indeed, the testimony was that Dustin would actually be amenable to these services, that he was engaged, that his reports from the court were actually positive, the ones from the detention center. And not only that, Interim Director Rob Vickery of the Department of Juvenile Justice talked about how kids, even those charged and convicted of first-degree murder, do quite well in the Department of Juvenile Justice. And here was another point that came up, which is one of the reasons that Dustin actually had not engaged in some of the services, came up because the probation officer called by the state admitted that she really hadn't met with him and hadn't engaged with him. Why? Because this was in the middle of the COVID-19 pandemic. She wasn't actually in sort of the practice of visiting with some of these kids. And that was despite Dustin having apparently a positive marijuana drug test when he was incarcerated or when he was first detained. So in other words, what the court did here was flew in the face of the evidence here. And we recognize this is a high standard, but the court's conclusions here and the way it reaches a transfer decision is not unfettered. This court's hands are not tied. Here where the court misapplied, the transfer statute ignored or made unreasonable conclusions from the evidence before it, this court should reverse. And with that, I will save the rest of my time for rebuttal. I believe that's five minutes. Thank you, your honors. Okay. Ms. Moore, any questions? No questions. All right. You will have time in reply. Ms. O'Connell? Good afternoon. Erin O'Connell on behalf of the people of the state of Illinois. I'm going to focus the two issues that were raised by my opponent. Both of them are subject to very deferential standards of review, I would note. The first issue of the juvenile transfer is an abuse of discretion standard. Essentially, this court has to find the determination to be arbitrary or unreasonable. And here the court did accord great weight to the two factors that the statute directs it to accord the most weight to. The first of those is the severity of the crimes. Here we had two homicides in which the juvenile was alleged to be a principal offender, in which he had planned an armed robbery and brought a handgun to the armed robbery. And the second factor to which the court is supposed to accord great weight is the history of delinquency. So defendant in this case was actually already under the supervision of the juvenile court at the time he committed. He had already been charged with a previous incident of armed robbery involving two of his one co-defendant here and then one of the victims of the crime, Sloan. Jevon Griggs and Sloan and him were participating in an armed robbery and he had been directed not to have contact with either of those individuals or to possess a firearm. And he violated those conditions and committed the murders at issue here. So those two factors alone weigh very strongly in favor of the court's decision to transfer this to adult court. And then I did want to turn to the Batson question and sort of take a bigger picture view of how these events transpired. I don't think the record supports the allegation that there was a singling out of a particular juror in the prosecutors going to the police and saying, can you investigate this person? Instead, he indicated to the court that he had given the full list of potential jurors to the officers who were known before they started the voir dire. And it just happened to be when they broke for lunch, that they got the results of that inquiry back. The results of the inquiry were that this juror Cross had a criminal history that he had failed to disclose. The question that have been posed to the entire veneer was, have you been charged with a crime? Other jurors responded to that affirmatively, understanding the question, juror Cross did not. The court, when asked to find that he should be dismissed for cause, opted to try to clarify his answers in case he had misunderstood the question. So they called juror Cross back in and they inquired further about his criminal history. And at that time he revealed that he had a conviction for domestic violence that he had not disclosed. And there was also a history of, I think, four other charges that did not result in conviction. That is true that the court did not find that that rose to the level of a four cause challenge, but that doesn't mean that the prosecutor had to accept at face value, the explanation that he didn't understand the question. So when the court was evaluating the Batson challenge and asked for the race neutral rationales for striking him, the prosecutor said that there was, he didn't accept at face value and had concerns about the truthfulness of this juror's answers based on that failure to disclose his criminal history. So that's one of the red flags that the prosecutor cited. The prosecutor had additional red flags, and it's not a, it's a big picture question when exercising a peremptory strike. We don't look at each rationale in isolation and say, was that enough? Does that fully explain it? But the prosecutor said, in addition to this potential dishonesty, there was a, I guess, weird and strange were the words he used, but a seeming evasiveness perhaps in responding to some of the questions, not about the criminal history, but about what the adult children did. So he was sort of resistant to the questioning on that. And then a third red flag that was raised by the prosecutor, family members of both the victim and the defendant. And there's no dispute that he did have a great familiarity with the victim's mother. They worked together and he was familiar with the victim's stepfather. And then he also was familiar with members of the audience in the court who were related to the defendant. So the prosecutor explained that given all of these rationales, this was too many factors for him to feel comfortable proceeding with Cross as a juror on the panel. This question before this court is whether that was manifestly erroneous. Petitioner, defendant in this case has not met the burden of demonstrating that. Any one of these would have been sufficient, but certainly taken together, these rationales provide more than reasonable basis for the prosecutor to have exercised a peremptory strike. And I know that the issue of the sentencing wasn't specifically addressed in the opening argument, but I would just call the court's attention to a motion that we filed last week in anticipation of this argument. There was a decision in People v. Spencer on the Eighth Amendment issue that's been raised here. The question of whether this 40-year sentence with eligibility for parole after 20 years constitutes a violation of the Eighth Amendment. As we've noted, it's not a de facto life sentence because it's 40 years. However, in addition, it's also not a de facto life sentence because of the parole eligibility. And Spencer did resolve that second question and the Illinois Supreme Court held that that's a meaningful opportunity for a release that takes this outside of the ambit of the Miller lineup cases under the Eighth Amendment. So, I would just ask the court to refer to Spencer in resolving that question. And I'm happy to answer any questions that the court might have on any of the other issues in the brief. Justice Moore. Justice Moore, any questions? No questions. Yeah, I don't have any at this time. And that motion that was filed, I don't believe it was ruled on. It's going to be taken with the case. And so, we will issue our ruling with that when we issue the ruling. Thank you. Has that decision become final? It was within the last month. So, I believe it still might be within the rehearing period. So, it was issued, I think it was June 5th. So, I don't believe there's been a petition for rehearing filed, but it's right on that cusp. But it will be final soon, certainly. And the court can look to it for guidance on its reasoning as to why this is not a de facto life sentence. And so, we would ask that this court affirm the judgment in all respects. Thank you. Thank you, Ms. O'Connell. You want to try it again, Your Honor? I was going to try it again, but I think I would say if you're ready, you may begin. How's that? Thank you, Your Honor. Counsel also works. Your Honors, would you like me to address the sentencing issue and Spencer, I guess, since that's been raised? If you'd like to, that's your prerogative, you may. I'll just address it briefly, Your Honors. In our briefing, we raised actually two separate constitutional sentencing arguments. One is under the Eighth Amendment, as Ms. O'Connell stated. One is under the Illinois Proportionate Penalties Clause as applied. I'll note at the outset that Spencer leaves alone that as applied challenge and actually says that the defendant in that case might still be able to raise such a challenge. But leaving that aside, our Eighth Amendment challenge is based not on Dustin having a per se de facto life sentence. We agree that he does not under what stands as the law currently. But what our position is that as applied to him, that Eighth Amendment challenge and the reasoning behind it should still stand, given his underdevelopment, given all the factors we cited, and also just simply the lack of discretion that happens in a case like this when the mandatory minimum is 40 here without any room to go below that. So just to clarify those arguments, Your Honor, while Spencer is still pending prior to being final. Now, with respect to the other claims, again, not to rehash what I said in my initial arguments. But first, in terms of transfer, yes, we agree that the standard is abuse of discretion and we meet it. This is not a case of reweighing the evidence or making different inferences. The court just ignored the experts and came to literally the opposite conclusions. That's what happened here, and that's what abuse of discretion is for. With regard to the seriousness of the offense, I would say only that this is a more complicated case than saying that Dustin simply was the principal and fired guns at two individuals. One of those individuals was Claivante Sloan, his best friend and cousin, and there was certainly no allegation that Dustin had been the person who shot Claivante or that he would have had that plan. So just to sort of add to the understanding there, and with respect to the prior adjudication or prior, it was actually supervision in this case, we would argue that that actually contributes to the argument in a certain sense, which is that Dustin was found with some of those other older boys, including Claivante, and was handed a gun, which he threw, and was ultimately found with marijuana, and so the supervision charges related, again, to marijuana. So this is not a data point of an extensive history of delinquency. This is a one-off, and prior to this case, and arguably relating to the circumstances. And then quickly on the Batson argument, the question actually that was, well, I wanted to quote what actually happened at lunch. The transcript says at 163 to 164, could we have a few minutes? This is the state now. Judge, I have actually one more thing. Just over lunch, I had been talking to a police officer just about the last panel, just what do you think of various jurors? And he did mention that one of them, Mr. Cross, actually had a number of criminal convictions. I did look him up on JANO, so I'm a little concerned that he didn't volunteer when asked if he, a family member or close friend, had any criminal arrests or convictions in the past year. I would submit that that is not a thorough and neutral search of the entire panel. And then just to sort of conclude, Your Honor, and one small point about that is, when asked, the remaining panel offered up family members and close friends who might have been convicted or charged, which made sense because the question posed to them was somewhat complex and compound about your convictions, your family's convictions, all of that. So I don't think it's as clear as the state posited. But Your Honors, I just want to close by saying, you know, this is, this case is an absolute tragedy. There's certainly no way around that. That is something that not only everyone in the courtroom recognized to some extent, but also the mother of Claivante Sloan, who recognized that Dustin himself suffered from what had happened in this case. And based on all of the reasons we have submitted, we would ask that this court reverse the lower court's findings with respect to transfer and sentencing and the Batson violation and remand for a new trial or, and vacate, alternatively vacate Claivante Sloan's conviction. Okay, thank you. Justice Moore, any questions? No questions. All right. Thank you both counsel for your briefs in this matter, as well as your arguments here today. We will take this matter into consideration and issue our ruling in due course. You both have a good afternoon. Thank you. Thank you, Your Honors. Thank you. Have a good afternoon.